[Cite as *Beach v. Beach*, 2012-Ohio-3056.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| CHRISTOPHER R. BEACH | : | Patricia A. Delaney, P.J. |
|  | : | William B. Hoffman, J. |
| Plaintiff-Appellant | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 11CA0088 |
|  | : |  |
|  | : |  |
| BARBARA J. BEACH | : | O P I N I O N |
| Defendant-Appellee |  |  |


CHARACTER OF PROCEEDING: Civil Appeal from Licking County
Court of Common Pleas Case,
Domestic Relations Division, No.
10DR00556

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: June 28, 2012

APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

EUGENE F. BATTISTI, JR.              VICKY M. CHRISTIANSEN
15 E. Kossuth Street                     JULIE K. FIX
Columbus, Ohio 43206                 172 Hudson Avenue
                                                    Newark, Ohio 43055

*Edwards, J.*

{¶1} Plaintiff-appellant, Christopher Beach, appeals from the August 2, 2011, Judgment Decree of Legal Separation that was issued by the Licking County Court of Common Pleas, Domestic Relations Division.

## STATEMENT OF THE FACTS AND CASE

{¶2} Appellant Christopher Beach and appellee Barbara Beach were married on October 1, 1994. No children were born as issue of such marriage.

{¶3} On April 8, 2010, appellant filed a complaint for divorce against appellee. Appellee, on May 3, 2010, filed an answer and a counterclaim for legal separation.

{¶4} Subsequently, the final hearing commenced on March 21, 2011. The following evidence was adduced at the hearing.

{¶5} Appellee has a Bachelor of Science degree from Virginia Commonwealth University. She received her degree, which was in administration of justice, in 1986. On April 5, 2010, appellee was hired as a risk analyst by Chase Bank. Her salary was $29,000.00 a year with an additional ten percent for shift differential since she works the night shift. Appellee testified that the differential would go away if she changed shifts. Appellee also testified that overtime was not offered as a rule, but was sometimes offered seasonally on the weekends. Appellee testified that she was enrolled in a dental insurance plan through Chase and that she paid $7.60 every pay period for the same. In 2010, appellee also earned $1,831.00 in overtime. Effective February 15, 2011, she received a 3% raise for an increase of $880.00 per year. Appellee testified that she was paid twice a month and that she earned approximately $2,226.80 per month.

{¶6} At the hearing, appellee testified that she expected to spend around $3,027.00 a month on expenses, including expenses to maintain the marital residence. She indicated that she was asking for spousal support so that she could afford the marital residence. She testified that her health was good and that when the parties were together, they boated, played golf and took annual trips, including a trip to Disney World.

{¶7} Appellee testified that she had not taken any pleasure trips since the parties' separation and that she did not have the money to do so. She also testified that she had $10,000.00 in the bank at the time of the marriage and that she used the same to pay off appellant's debts.

{¶8} At the hearing, appellant testified that he was a police officer. As of the time of the hearing, he was earning approximately $60,000.00 a year from his employment with Franklin Township Police Department and another $19,448.00 from his employment with Kohl's. Appellant testified that out of his Franklin Township pay stub, he had $135.00 per pay in deferred compensation deducted as well as health insurance in the amount of $15.46 biweekly. Appellant testified that while he had worked for Kohl's for approximately three years doing security, he believed that his employment with Kohl's would cease in the future and not by his choice. A representative of Kohl's testified that he heard rumors that the store where appellant worked might be closing.

{¶9} Appellant testified that he moved out of the marital house in November of 2009 and moved in with his father and step-mother. He testified that he helped his parents with utility and food expenses. Appellant paid approximately $30.00 to $50.00 a

month for utilities.  He testified that his health was fair because he had kidney disease, but that his disease was stable. According to appellant, he will have to have a kidney transplant in the future and saw a doctor every six months. Appellant testified that his kidney disease did not keep him from working and that he took medication for high blood pressure and for kidney disease.

{¶10} At the hearing, appellant testified that he had taken some trips with Tara Blackstone, his girlfriend who lived with him. The two went to Florida in July of 2010 and Blackstone paid for the gas and the hotel. According to appellant, they split the cost of the meals. Appellant and Blackstone also took a three day cruise to the Bahamas in March of 2010, and that each paid their own way.  In December of 2010, the two flew to Disney. Appellant testified that they split the cost of the tickets and hotel and also that they also took some short weekend trips to Pittsburgh and split the cost of the gas. Appellant testified that he paid for some of the expenses through credit cards that he had obtained after he and appellee separated.  Appellant also testified that appellee had significantly reduced their joint debt over the past year and a half.

{¶11} On cross-examination, appellant testified that he was going to Las Vegas for his birthday and that the trip cost $520.00, that he went to one Steelers game and had been camping one time.  He also testified that appellee had had at least $10,000.00 in her bank account when they got married and that appellee had used the same to pay off appellant's debts.

{¶12} Tara Blackstone, appellant's girlfriend, testified at the hearing that she went with appellant on a cruise in October of 2010 and on another cruise in March of 2010 and that they each paid their own way, for a total of $820.00 per person. She

further testified that they went to Disney in January 2011 and that they split the cost, which was $608.00 a person, and that they were going to Las Vegas in May of 2011 for appellant's birthday. On cross-examination, Blackstone testified that appellant had never paid for a trip for her. She also testified that she lived with appellant and his parents and that she and appellant each paid a quarter of the utilities and also bought groceries.

{¶13} With respect to retirement benefits, exhibits were produced at trial showing that appellant had accrued OPERS [Ohio Public Employees Retirement System] benefits of $106,832.64 during the marriage and that appellant had accrued social security benefits of $6,219.88 in Social Security benefits and deferred compensation of $25,617.14 during the parties' marriage. In turn, appellee had accrued $80,718.85 in Social Security benefits during the marriage. Appellee also had an Ameriprise IRA with an approximate value of $2,400.00.

{¶14} As memorialized in a Judgment Decree of Legal Separation filed on August 2, 2011, the trial court awarded appellee a legal separation. The trial court, in its Decree, ordered that appellant pay spousal support to appellee in the amount of $1,000.00 per month for a period of five (5) years. The trial court also awarded appellee a judgment against appellant in the amount of $8,634.31, $5,000.00 of which was toward appellee's attorney fees. The trial court noted that appellant had testified that he had no attorney fees because of work benefits "while [appellee] struggled to meet her expenses."

{¶15} Appellant now appeals from the trial court's August 2, 2011 Judgment Decree of Legal Separation, raising the following assignments of error on appeal:

**{¶16}** "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING APPELLANT TO PAY $1000.00 PER MONTH FOR SPOUSAL SUPPORT.

**{¶17}** "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING APPELLANT TO PAY $5,000 FOR APPELLEE'S ATTORNEYS FEES."

I

**{¶18}** Appellant, in his first assignment of error, argues that the trial court erred in ordering him to pay spousal support in the amount of $1,000.00 a month. We disagree.

**{¶19}** This Court reviews the trial court's decision relative to spousal support under an abuse of discretion standard. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶20}** R.C. 3105.18(C)(1)(a) through (n) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support. These factors include:

**{¶21}** "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

**{¶22}** "(b) The relative earning abilities of the parties;

**{¶23}** "(c) The ages and the physical, mental, and emotional conditions of the parties;

**{¶24}** "(d) The retirement benefits of the parties;

**{¶25}** "(e) The duration of the marriage;

**{¶26}** "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

**{¶27}** "(g) The standard of living of the parties established during the marriage;

**{¶28}** "(h) The relative extent of education of the parties;

**{¶29}** "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

**{¶30}** " * * *;

**{¶31}** "(l) The tax consequences, for each party, of an award of spousal support;

**{¶32}** " * * *;

**{¶33}** "(n) Any other factor that the court expressly finds to be relevant and equitable."

**{¶34}** In the case sub judice, the trial court, in its Decree, clearly considered the above factors. The trial court noted that appellant was earning approximately $60,000.00 a year from his employment with Franklin Township and another $19,448.00 from his employment with Kohl's, for a total of approximately $79,000.00 per year, while appellee earned approximately $30,000.00.[1] The trial court determined that an award of spousal support to appellee in the amount of $12,000.00 would "still leave a disparity in the parties' incomes $47,000-$67,000 for the plaintiff and $42,000 for the Defendant."

---

[1] Exhibit 25 showed that effective February 1, 2011, appellee's annual salary would be $30,000.00

While appellant takes issue with the trial court using a range of $20,000.00 for appellant's income, we note that appellant, at the hearing, testified that he believed that his employment with Kohl's would cease in the future due to circumstances beyond his control. Thus, appellant's own testimony supported the range of figures used by the trial court.

{¶35} Moreover, the trial court also noted that the parties had been married for 16½ years and that both parties were currently healthy and able to work. Appellant argues that the trial court erred in finding that he was currently in good health and notes that he has a serious kidney disease, would need a transplant in the future and that he saw a doctor every six months and was on medication. However, appellant himself testified that his kidney disease was stable and that his health was fair. He also testified that his disease did not keep him from working.

{¶36} The trial court, in awarding spousal support, also noted that appellant's retirement was better than appellee's and that while appellant was able to maintain the standard of living that the parties had established during their marriage, appellee was not. With respect to retirement benefits, evidence was adduced at trial that appellant had accrued OPERS benefits of $106,832.64 during the marriage and that appellant had accrued social security benefits of $6,219.86 and deferred compensation of $25,617.00 during the parties' marriage. In turn, appellee had accrued $80,718.85 in Social Security benefits during the marriage. Appellee also had an IRA with an approximate value of $2,400.00. The trial court, in its Judgment Decree, awarded appellant his OPERS benefits and appellee the deferred compensation account and her IRA with Ameriprise.

{¶37} Moreover, there was testimony at the hearing that during the marriage, the parties took vacations and owned a boat. While appellant, who was living with his parents, went on two cruises and to Disney since the parties' separation and also obtained a new car, appellee was financially unable to do so. Appellant, at trial, introduced Exhibit 28 which showed that, after his total expenses, he had a monthly surplus of $527.28. Thus, as noted by the trial court, while appellant was able to maintain his standard of living, appellee's standard of living had decreased since the parties' separation.

{¶38} Finally, as noted by the trial court, appellee was awarded the marital residence which had no equity[2] in the same and was taking responsibility for the mortgage, taxes and insurance on the residence.

{¶39} Based on the foregoing, we find that the trial court did not err in ordering appellant to pay spousal support to appellee in the amount of $1,000.00 a month for a period of five years. The trial court's decision was not arbitrary, unconscionable or unreasonable.

{¶40} Appellant's first assignment of error is, therefore, overruled.

II

{¶41} Appellant, in his second assignment of error, argues that the trial court erred in ordering him to pay $5,000.00 for appellee's attorney fees. We disagree.

{¶42} An award of attorney's fees lies within the sound discretion of the trial court. *Rand v. Rand*, 18 Ohio St.3d 356, 359, 481 N.E.2d 609 (1985). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable,

---

[2] While the house was valued at $165,000.00, there was a first mortgage on the same in the amount of $137,883.00 and a second mortgage in the amount of $30,635.00

arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶43}** R.C. 3105.73(A) reads as follows: "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."

**{¶44}** In the case sub judice, the trial court, in its August 2, 2011 Judgment Decree, stated, in relevant part, as follows: "Defendant is awarded a judgment against the Plaintiff for $8,643.31 ($5,000 toward Defendant's attorney fees (Exhibit O) and $3,643.31 for property division ….) The Plaintiff testified he had no attorney fees because of work benefits while Defendant struggled to meet her expenses. Exhibit O shows the Defendant's attorney fees based on only one (1) day of trial. Further the Court finds pursuant to R.C. 3105.73(A) an award of fees to the Defendant is equitable in light of the circumstances." The amount of attorney fees listed on Exhibit O was $12,799.86.

**{¶45}** Appellant argues that he should not have been ordered to pay any of appellee's attorney fees because appellee was financially able to do so. Appellant maintains that appellee testified inconsistently about her monthly expenses and argues that she had extra money every month. However, at the hearing, appellee testified that, since the parties' separation, she had paid down the marital debt by over $25,000.00.

Appellant admitted that appellee had significantly reduced their joint debt in the last year and a half before the hearing. The trial court, in its Judgment Decree, noted that while appellee, who earned substantially less than appellant, was paying down the debt, appellant went and obtained a new car in either December of 2010, or January of 2011, and took several cruises and trips. Appellant testified that his car payment was $590.00 a month.

**{¶46}** Based on the foregoing, we find that the trial court did not err in ordering appellant to pay $5,000.00 for appellee's attorney fees. The trial court's decision was not arbitrary, unconscionable or unreasonable.

**{¶47}** Appellant's second assignment of error is, therefore, overruled.

**{¶48}** Accordingly, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division is affirmed.

By: Edwards, J.

Delaney, P.J. and

Hoffman, J. concur

_____

_____

_____

JUDGES

JAE/d0404

[Cite as *Beach v. Beach*, 2012-Ohio-3056.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER R. BEACH | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| BARBARA J. BEACH | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 11CA0088 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES